IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

KOREY HAAS                                                                                           PLAINTIFF

v.                                        Civil No. 10-3012

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                                  DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Korey Haas, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I.   Procedural Background:**

The plaintiff filed his application for DIB and SSI on December 26, 2006, alleging an onset date of June 9, 2006, due to short-term memory loss, problems with impulse control and anger management, migraine headaches, morbid obesity, organic brain disorder, and personality disorder. Tr. 42, 104-113, 129-130, 143, 153. The Agency denied his application initially and on reconsideration.

An administrative hearing was held on June 8, 2009. Tr. 8-32. Plaintiff was present and represented by counsel. At this time, plaintiff was 22 years of age and possessed a high school

education with some college courses. Tr. 10-11, 48-49, 127. He had no past relevant work ("PRW") experience. Tr. 49.

On August 27, 2009, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's morbid obesity, organic brain disorder, and personality disorder did not meet or equal any Appendix 1 listing. Tr. 42-44. The ALJ determined that plaintiff maintained the residual functional capacity ("RFC") to perform sedentary work that does not involve continuous handling and fingering. Tr. 44-48. He also concluded that Plaintiff suffered from moderate restrictions in maintaining social functioning; persistence, concentration, and pace; making judgment on simple work-related decisions; understanding, remembering, and carrying out detailed instructions; responding appropriately to usual work situations and routine work changes; and appropriately interacting with supervisors. Further, the ALJ found that Plaintiff could perform work where the interpersonal contact was incidental to the work performed; the complexity of the tasks was learned and performed by rote with few variables and little judgment; and, the supervision required was simple, direct, and concrete. With the assistance of a vocational expert, the ALJ then found that plaintiff could perform work as a production assembler, small products assembler, and hand packager/packer. Tr. 49-50.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on December 4, 2009. Tr. 1-4. Subsequently, plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 8, 9.

## II.   **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

### A. The Evaluation Process:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

Of particular concern to the undersigned is the lack of medical evidence of record to indicate Plaintiff's work-related abilities and limitations. Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). In determining whether an ALJ has fully and fairly developed the record the proper inquiry is whether the record contained sufficient evidence for him to make an informed decision. *See Payton v. Shalala*, 25 F.3d 684, 686 (8th Cir. 1994); *Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir. 1989).

The relevant medical evidence reveals as follows. On February 16, 2007, Plaintiff underwent a mental evaluation with Dr. Stephen Harris. Tr. 187-192. Plaintiff reported being

4

involved in a motor vehicle accident on June 9, 2006, resulting in head injuries that affected his memory and impulse control. Plaintiff indicated that he did not remember the remainder of that summer, and now needed constant reminders to perform activities. Dr. Harris diagnosed him with rule out attention deficit hyperactivity disorder ("ADHD"), rule out impulse control disorder, past head trauma, and difficulty in interpersonal relationships, and he assessed him with a global assessment of functioning ("GAF") score of 52. Plaintiff was noted to get along pretty well with others. Although he never went into a rage while at school, Plaintiff indicated that he was very forgetful and did not remember necessary things. Dr. Harris opined that Plaintiff would need daily supervision. He also stated that Plaintiff appeared to emphasize his difficulties. Tr. 187-192.

On July 25, 2007, Plaintiff underwent a mental diagnostic evaluation with Dr. W. Charles Nichols. Tr. 193-197. He reported anger control problems, symptoms consistent with anomia, and short-term memory deficits following a car accident in June 2006. Plaintiff stated that he recurrently punched through walls in his home and broke things items when angry. He indicated that small things agitated him. Dr. Nichols noted that he had previously treated Plaintiff for posttraumatic stress disorder in 2001, following an incident in which he was physically attacked by another student at his school. He had also referred Plaintiff to Dr. Dollins, who had prescribed Zoloft. However, Plaintiff only saw Dr. Dollins two or three times before discontinuing the medication. In 2003-2004, Plaintiff was also treated by David Masterson at Youth Bridge. Plaintiff was currently taking no psychotropic medications. He was only taking Maxalt for migraine headaches.

Plaintiff stated that he smoked cannabis daily and had last used it the previous night. He said it allowed him to "tone down," so he did not have to listen to his mother tell him he was nothing but a burden. Further, Plaintiff stated that he had begun binge eating after his accident, and now weighed 380 pounds. His gait was slow and lumbering, and he sat slumped in his seat. He was cooperative and talkative, described his mood as extremely angry, had very fluent and expressive speech, exhibited clear articulation, and expressed goal directed and logical thoughts. Upon testing, there were some signs that were suspicious for exaggeration, including latency and poor performance on digit span forward, his capacity to recall details before and after the accident in great details, and lack of significant cognitive issues during the interview. He also recalled on one of three words after five minutes, but then recalled all three new words after one minute. Further, Plaintiff described his symptoms with a degree of indifference, which was unusual, almost as if he was detached from the content of what he was saying about his symptoms and his life situation. Therefore, Dr. Nichols diagnosed Plaintiff with cognitive disorder not otherwise specified,[1] diagnosis deferred with histrionic personality traits, and assessed Plaintiff with a GAF of 55. Based on his symptoms, Dr. Nichols noted that a moderate degree of impairment with activities of daily living was expected. His social presentation was atypical, although he likely had adequate social skills for most entry level jobs or those that did not depend heavily on interaction with the public or co-workers. Plaintiff responded to the tasks of the interview with adequate mental efficiency and was able to track and respond to various

---

[1] Cognitive disorder not otherwise specified is a disorder characterized by cognitive dysfunction presumed to be due to the direct physiological effect of a general medical condition. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 179 (4th ed. 2000). Examples include postconcussional disorder. *Id*.

AO72A
(Rev. 8/82)

types of questions and tasks. He showed consistent attention for basic cognitive tasks and historical questions that were presented in the evaluation. He did not appear to lose concentration or demonstrate symptoms of fatigue. His concentration remained consistent as the interview progressed, and he did not display signs of psychomotor slowing that could be expected to interfere with job-like tasks. In response to mental status/cognitive tasks, the claimant responded with average to above average pace on most tasks. Tr. 193-197.

On April 3, 2008, Plaintiff underwent a neuropsychological assessment with Dr. Michael Whetstone of rehabilitation psychology services at the request of his primary care physician Dr. Victor Armstrong. Tr. 218-226. Plaintiff indicated that he had been involved in an automobile accident on June 9, 2006, resulting in a head injury. He reported a variety of cognitive and personal changes as a result of this accident. Plaintiff described a variety of changes in personality involving increased violence. He also complained of sleep disturbance, blackouts, mood changes, and memory changes. In addition, Plaintiff endorsed some symptoms suggestive of anxiety disorder versus PTSD. He denied a history of illicit drug or alcohol use, but admitted to smoking one to one and one-half packages of cigarettes per day.

Overall, Plaintiff was cooperative and appropriate. His mood was somewhat withdrawn and he appeared mildly depressed and at times almost indifferent. Plaintiff provided a lengthy history as to his concerns and complaints and was able to provide a detailed social history without difficulty. He stated that he had enrolled at Lyon College and completed classes between 2006 and 2007, with a major in pre-med. Plaintiff indicated that he had done "absolutely nothing" over the previous year, aside from taking a class in medical terminology and obtaining an A. He also reported taking a first aide responder class and obtaining an A.

Testing revealed a low average general working memory, reflecting weaknesses in Plaintiff's auditory delayed and visual delayed recall. His visual immediate recall was also defective. He also had a full scale IQ of 112. As for motor strength and coordination, Plaintiff's upper extremity grip strength was low average in his right hand and slightly weak in his left hand. Overall results suggested a mild discrimination between the right and left-handed abilities. This was not consistent with Plaintiff's right hand dominance, yet reflected a significant weakness in both right and left handed grip strength. Dr. Whetstone diagnosed plaintiff with cognitive disorder not otherwise specified involving weakness in general memory with deficiency in visual immediate recall. A possible mild decline in general intellectual functioning was also suggested by average performance in a variety of areas including verbal abstract reasoning, attention and concentration, sequencing abilities, and graphomotor speed. Plaintiff's language and communication skills were generally strong for receptive and expressive language, yet a right-sided auditory suppression was indicated. Dr. Whetstone strongly recommended an audiologic evaluation to include a more focused assessment of auditory suppression in the right ear. He also indicated that Plaintiff's current weaknesses in visual immediate memory were identified and might be amenable to improvement through vision training. Further, an assessment of possible additional visual perceptual changes and/or visual memory was suggested. Tr. 218-226.

On May 1, 2008, Dr. Whetstone completed a disability verification form for the Harrison Housing Agency. Tr. 227. He indicated that Plaintiff was disabled and could not engage in substantial gainful activity because of a physical or mental impairment that was expected to

result in death or had lasted or could be expected to last continuously for at least 12 months. Tr. 227.

On November 14, 2008, Dr. Kevin Jackson also completed a disability verification form. Tr. 228.

At the onset, we note that none of the psychologists who performed a mental evaluation of Plaintiff were asked to complete a mental RFC assessment. The only mental RFC assessment was completed in 2007 by a doctor who never examined Plaintiff. It is also important to note that he had access to only two of the mental evaluations performed on Plaintiff. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence).

We also note that the two doctors who assessed Plaintiff's GAF, both assessed him with scores in the 50s. Scores falling between 51 and 60 are indicative of moderate symptoms or moderate difficulty in social, occupational, or school functioning. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 34 (4th ed. 2000). Dr. Harris also opined that Plaintiff would need daily supervision, but did not elaborate at to what this might entail. Tr. 187-192. Further, Dr. Whetstone completed a form indicating that Plaintiff was disabled. Tr. 227. And, Plaintiff has indicated that he suffers from anger and aggression issues that lead him to experience violent outbursts. Although the ALJ did conclude that Plaintiff had moderate limitations in many areas of functioning, without assessments from the psychologists who actually treated him, we can not say that the ALJ's RFC determination is supported by substantial evidence. The record simply does not make clear what Plaintiff's limitations are. An ALJ's determination concerning a claimant's RFC must be supported by medical evidence that

9

addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003). Further, because this is a crucial issue, it is the ALJ's duty to ensure that the record is developed in this regard. *See Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) (social security hearing is non-adversarial proceeding, and ALJ has duty to develop record fully; duty may include seeking clarification from treating physicians if crucial issue is undeveloped or underdeveloped).

Accordingly, on remand, the ALJ is directed to request RFC assessments from all three of the psychologists who examined Plaintiff. They should be asked to review plaintiff's medical records; to complete a mental RFC assessment regarding plaintiff's capabilities during the time period in question; and, to give the objective basis for their opinions, so that an informed decision can be made regarding plaintiff's ability to perform basic work activities on a sustained basis during the relevant time period in question. *Chitwood v. Bowen*, 788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985). As there is also a question concerning Plaintiff's possible use/abuse of marijuana, they should also be questioned regarding the impact of marijuana use/abuse on Plaintiff's overall mental RFC.

Additionally, the ALJ discounts Plaintiff's symptoms and subjective complaints because the record does not contain any medical records documenting Plaintiff's treatment following the automobile accident in which he allegedly sustained a head injury and now complains of resulting cognitive and memory problems. We note that records from Dr. Whetstone indicate that Plaintiff was referred by his primary care physician, Dr. Victor Armstrong. A Dr. Kevin Jackson also completed a disability verification form on Plaintiff's behalf. There are, however, no records from either of these doctors contained in the record. We also note Dr. Whetstone's

examination revealing some weakness in grip strength in both the left and the right hands, and notations by all three psychologists regarding Plaintiff's morbid obesity. While we are cognizant of Plaintiff's duty to develop the record concerning his disability, we also note that the ALJ shares in that duty. And, given the fact that the medical record is so scant and that the impairments Plaintiff complains of are of such great significance, we do believe the ALJ had a duty to request medical records from both of these doctors. His failure to do so constitutes a failure to fully and fairly develop the record in this case. *See Smith*, 435 F.3d at 930. Therefore, on remand, the ALJ is directed to obtain medical records from Plaintiff's treating doctors. Should these records be unavailable, a consultative examination with a neurologist should be ordered complete with tests to determine the true impact of Plaintiff's 2006 accident.

On remand, Plaintiff should also request medical records from all other doctors, clinics, or emergency rooms from which he has sought treatment since his accident in June 2006.

### IV. Conclusion:

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 28th day of July 2011.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE